UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GAROLD ALLEN, et al.,

        Plaintiffs,

vs.

SEARS ROEBUCK AND CO., et al.,

        Defendants.
_____/

Case No. 07-11706

HON. GEORGE CARAM STEEH

## ORDER DENYING DEFENDANTS' MOTION FOR CHANGE OF VENUE AND DENYING WITHOUT PREJUDICE DEFENDANTS' MOTION TO DISMISS

Plaintiffs filed this putative class action lawsuit for age discrimination against defendant Sears and its wholly owned subsidiary, alleging that a decision to transfer employees had an adverse disproportionate effect on those employees age 40 and older in violation of the Age Discrimination in Employment Act ("ADEA"). Defendants have filed two motions, one for change of venue, and the other to dismiss for failure to state a claim.

## FACTUAL BACKGROUND

Defendant Sears Holdings Corporation ("Sears Holding") through its predecessor and wholly owned subsidiary, defendant Sears, Roebuck and Co. ("Sears") offers installed home improvement products and services to the public for purchase, including heating, ventilation and air conditioning ("HVAC") products and installation services. Sears employed approximately 550 HVAC Sales Associates nationwide. The HVAC Sales Associates worked from their homes on a commission basis, and received leads

from their respective home offices.  They were reimbursed for their business expenses, including mobile telephone use and mileage.  They received paid holiday, vacation and personal time using a "benefit rate" that was based upon commissions.

Sears began to acquire other home improvement companies and, in 2001, combined some of them into a wholly owned subsidiary, defendant Sears Home Improvement Products ("SHIP").  In 2004, Sears announced to its HVAC Sales Associates that their employment would be "transitioned" to SHIP and they would become employees of SHIP.  The HVAC Sales Associates were essentially terminated from Sears and hired by SHIP.

By implementing this intra-corporate merger, the compensation earned by the HVAC Sales Associates was drastically reduced.  Business expenses were no longer reimbursed, many hours of paid time off were lost, and work hours were increased. Plaintiffs allege that as a result of the transition to SHIP, many of the HVAC Sales Associates over the age of 40 were terminated, or they terminated their employment with defendants.

The plaintiffs herein have brought this suit on behalf of themselves and the other similarly situated former HVAC Sales Associates, who at the time of their "transition" were age 40 and above and who terminated their employment or were terminated during the years 2004 through 2006.

The decision to transition plaintiffs to SHIP was made in Longwood, Florida, SHIP's principal place of business, and Hoffman Estates, Illinois, Sears' and Sears Holding's principal places of business.  The decision was implemented in Longwood, Florida.  Defendant's key witnesses, those involved in making and implementing the

2

decision to transition plaintiffs from Sears to SHIP, are located in Florida and Illinois. The majority of the relevant records, documents and information in this action are in SHIP's possession in the Middle District of Florida.

Of the seven named plaintiffs, only Suzanne J. Novak and David McKillop reside in Michigan. Sylvester DeRosa resides in New York, Donald Murphy in North Carolina, Ronnie Willms in Tennessee, Walter Magness in California, and Garold Allen in Illinois. Of the approximately 550 HVAC Sales Associates who were transitioned from Sears to SHIPS, 18 resided in Michigan just prior to the transition.

<u>LEGAL STANDARD AND ANALYSIS</u>

I. <u>Motion for Change of Venue</u>

Defendants move the court to transfer this case to the Middle District of Florida for the convenience of the parties and witnesses. 28 U.S.C. § 1404(a) provides:

> For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

"District courts have wide discretion to transfer an action under 28 U.S.C. § 1404(a) in order to prevent waste of time, energy and money, and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." <u>Grand Kensington, L.L.C. v. Burger King Corp.</u>, 81 F.Supp.2d 834, 836 (E.D. Mich. 2000) (quoting <u>Hedler v. Hitachi Power Tools, USA Ltd.</u>, 764 F.Supp. 93, 95-96 (E.D. Mich. 1991)). However, a court "should give deference to a plaintiff's choice of venue." <u>Id</u>. (quoting <u>General Motor Corp. v. Ignacio Lopez de Arriortua</u>, 948 F.Supp. 656, 668 (E.D. Mich. 1996)). "When a defendant moves to change the forum, he must overcome the presumption that the plaintiff has chosen the proper forum." <u>Id</u>. (citation omitted).

When considering a motion to transfer venue pursuant to 28 U.S.C. § 1404(a), the first prong to be considered by the court is whether venue is appropriate in the court where the action is sought to be transferred. McNic Oil & Gas Co. v. IBEX Resources Co., L.L.C., 23 F.Supp.2d 729, 739 (E.D. Mich. 1998). If answered in the affirmative, then a court should consider the following factors when ruling on a motion under §1404(a): (1) the convenience of the parties; (2) the convenience of the witnesses; (3) the relative ease of access to sources of proof; (4) the availability of process to compel attendance of unwilling witnesses; (5) the cost of obtaining willing witnesses; (6) the practical problems associated with trying the case most expeditiously and inexpensively; and (7) the interest of justice. Helder, 764 F.Supp. at 96.

Here, defendants "bear the burden of demonstrating that, in light of these factors, 'fairness and practicality strongly favor the forum to which the transfer is sought.'" Thomas v. Home Depot, U.S.A., Inc., 131 F.Supp.2d 934, 936 (E.D. Mich. 2001) (quoting Rowe v. Chrysler Corp., 520 F.Supp. 15, 16 (E.D. Mich. 1981)). Defendants "must make this showing by a preponderance of the evidence." Id. (citing International Union, U.A.W. v. Aluminum Co. of Am., 875 F.Supp. 430, 433 (N.D. Ohio 1995)).

The court finds that the action could have been brought in the United States District Court for the Middle District of Florida because there is subject matter jurisdiction over the ADEA claim, which raises a federal question. Further, venue and personal jurisdiction are proper in the Middle District of Florida because defendant SHIP has its principal place of business there and defendants otherwise engaged in activities there that gave rise to this lawsuit. LAK, Inc. v. Deer Creek Enterprises, 885 F.2d 1293, 1303 (6th Cir. 1989).

1. <u>The nature of the lawsuit</u>

In non-class actions, the plaintiffs' choice of forum is given a fair amount of weight. Defendants contend that in class actions this factor is entitled to less weight. While there is no Sixth Circuit or appellate authority on point, defendants cite to several district court cases for this proposition. <u>Fox v. Massey-Ferguston</u>, 1995 WL 307485, *4 (E.D. Mich. March 14, 1994); <u>International Show Car Ass'n v. ASCAP</u>, 806 F.Supp. 1308, 1310 (E.D. Mich. 1992); <u>Butcher v. Gerber Prods. Co.</u>, 1998 WL 437150, * 10 (S.D.N.Y. 1998). Only two of the seven named plaintiffs reside in Michigan and the subject matter of the action has no unique connection to Michigan, as compared to any other state.

Although plaintiff's choice of forum may be entitled to less deference in this case, defendants must still make a strong showing that the following factors favor a transfer to the Middle District of Florida.

2. <u>The convenience of the parties</u>

Two of the seven named plaintiffs reside in Michigan, and eighteen of the HVAC Sales Associates resided in Michigan just prior to the transition. Plaintiffs also argue that Michigan is a middle-ground for the named plaintiffs. On the other hand, the putative class of plaintiffs consists of up to 400 former employees located throughout the country. In addition, SHIP's principal place of business is in the Middle District of Florida, and it employs 1,415 individuals in the state of Florida. This factor slightly favors defendants.

3. <u>The convenience of the witnesses</u>

The convenience of the witnesses is a significant factor in passing on a motion to

transfer under 28 U.S.C. § 1404(a). Defendants' key witnesses are, for the most part, located in Florida. They include:

(1) Joseph Steenbeke - former Vice President and General Manager of SHIP. Mr. Steenbeke was involved in the decision to integrate the HVAC Sales Associates with SHIP, and he worked in Longwood, Florida at the time the decision was made. Mr. Steenbeke no longer works for defendants, although he resides in Longwood.

(2) James Williams - former Finance Director of SHIP. Mr. Williams was involved in the plan to integrate the former HVAC Sales Associates into SHIP. He worked for SHIP in Longwood, is no longer employed by defendants, and currently resides in Oviedo, Florida.

(3) John Williams - Vice President of Marketing for SHIP. Mr. Williams was involved in the design and implementation of the integration of HVAC Sales Associates into SHIP. He works for SHIP in Longwood and resides in Winter Springs, Florida.

(4) James Brown - Vice President of Sales for SHIP. Mr. Brown was involved in the actual integration of HVAC Sales Associates into SHIP. He works for SHIP in Longwood and resides in Winter Springs, Florida.

The fact that two of defendants' key witnesses are no longer employed by defendant is defendants' strongest argument for transferring venue to the Middle District of Florida. Whether these witnesses would travel to Michigan to testify in person, or whether the parties will be forced to take their de bene esse depositions is unknown at this time. The fact of the matter is that any chosen venue will be less convenient for

some witnesses and more convenient for others.

    4. <u>Relative means of parties</u>

The plaintiffs are, for the most part, retirees without significant economic means. The defendants are large corporations that can afford to conduct litigation using any of their offices in Michigan.

    5. <u>Conclusion</u>

Although defendants have made some valid arguments for transferring venue to Florida, they have not shown that fairness and practicality "strongly" favor a transfer of this action over plaintiffs' chosen forum. Defendants' motion to transfer venue is DENIED.

## II. <u>Motion to Dismiss for Failure to State a Claim</u>

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests the sufficiency of the pleadings. Defendants' motion questions whether plaintiffs have, under Fed. R. Civ. P. 8(a), made the requisite "showing that the [plaintiffs] [are] entitled to relief." "A plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a familiar recitation of the elements of a cause of action will not do." <u>Bell Atlantic Corp. v. Twombly</u>, __ U.S. __, 127 S.Ct. 1955, 1964-65 (2007). The Supreme Court in <u>Bell Atlantic Corp.</u> updated the standard for a motion to dismiss this year as follows: "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint."

A prima facie case under a disparate impact theory is established when: (1) plaintiff identifies a specific employment practice to be challenged; and (2) through relevant statistical analysis proves that the challenged practice has an adverse impact

7

on a protected group.  Johnson v. U.S. Dept. of Health and Human Servs., 30 F.3d 45, 48 (6th Cir. 1994) (citing Scales v. J.C. Bradford & Co., 925 F.2d 901, 907-08 (6th Cir. 1991)).  The Supreme Court recognized that a disparate impact claim could be asserted under the ADEA in Smith v. City of Jackson, 544 U.S. 228, 125 S.Ct. 1536 (2005).  The Court noted generally that disparate impact claims "involve employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another . . . ." (quotation omitted).  The Court recognized that the scope of disparate-impact liability under the ADEA is narrower than under Title VII.[1]  The Court reiterated its position that a plaintiff must identify a specific employment practice that is responsible for creating the disparate impact being attacked:

> As we held in *Wards Cove*, it is not enough to simply allege that there is a disparate impact on workers, or point to a generalized policy that leads to such an impact.  Rather, the employee is 'responsible for isolating and identifying the *specific* employment practices that are allegedly responsible for any observed statistical disparities.'

Id., 125 S.Ct. at 1545 (quotation omitted).

In City of Jackson, the City instituted a pay plan granting raises to all city employees, the purpose of which was, among other things, to attract and retain qualified employees and provide incentive or performance increases.  The plaintiffs attacked the

---

[1] One reason the scope of disparate-impact liability under ADEA is narrower than under Title VII is the Reasonable Factor Other than Age provision which provides that it shall not be unlawful for an employer to take any action otherwise prohibited where the differentiation is based on reasonable factors other than age discrimination.  The second reason is the amendment to Title VII which modifies the Supreme Court's holding in Wards Cove Packing Co. V. Antonio, 490 U.S. 642 (1989), a case which narrowly construed the employer's exposure to liability on a disparate-impact theory.  Therefore, Ward's Cove's interpretation of Title VII's identical language remains applicable to the ADEA.

pay plan as resulting in proportionately greater raises to officers under the age of 40. The Supreme Court affirmed a grant of summary judgment for the defendant, even though discovery was not complete, because plaintiffs had "not identified any specific test, requirement or practice within the pay plan that has an adverse impact on older workers." Id. The Court went on to find that the pay plan imposed by the City was based on reasonable factors other than age, seniority and position. Accord, White v. American Axle & Manufacturing, 2006 WL 335710, *6 (E.D. Mich. 2006) ("Plaintiff's complaint merely provides statistics alleging a number of older people who were laid off by AAM and makes no reference to any policy or practice allegedly employed by AAM that led to the disparities.")

The policy targeted by plaintiffs was the decision to transition the HVAC Sales Associates to SHIP. It is alleged that this policy impacted older workers more harshly, in part, because they had more banked hours to lose. It is not yet clear whether the transitioning of these employees should be viewed as a single, structural decision which would not amount to an "employment practice" for purposes of the first element of plaintiffs' cause of action, rather than a series of decisions which may satisfy that part of plaintiffs' burden. As stated, plaintiffs' claim looks similar to the organizational structuring decision that the court described in Kaukarni v. City University of New York, 2002 WL 1315596 (S.D.N.Y. 2002). In that case, the district court concluded plaintiff failed to identify a specific employment practice giving defendant fair notice of the claim to be defended.

The Court finds that plaintiffs' statement of the policy in this case satisfies the minimal notice pleading requirements of Fed. R. Civ. P. 8(a)(2), whereby the plaintiffs

9

must set forth a short and plain statement of their entitlement to relief, such that defendants will know what they must defend against. See Swierkiewicz v. Sorema N.A., 534 U.S. 506, 513-14 (2002). It remains possible for plaintiffs to advance a set of facts consistent with a finding that the transition plan amounts to an employment policy or practice in relation to the first prong of a disparate impact claim. The Court will permit the case to continue, allowing the particular aspects of the transition plan to be developed during discovery. Depending on how the aspects of the plan unfold, defendants may renew their motion to dismiss at any time, or bring a motion for summary judgment at the conclusion of discovery.

Accordingly, the court finds that plaintiffs have set forth a specific plan or practice, such that defendant has fair notice of what plaintiffs' claim is and the grounds upon which it rests.

## CONCLUSION

For the reasons set forth above, defendants' motion to change venue is DENIED and defendants' motion to dismiss is DENIED without prejudice.

Dated: August 20, 2007

S/George Caram Steeh  
GEORGE CARAM STEEH  
UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on August 20, 2007, by electronic and/or ordinary mail.

s/Josephine Chaffee
Deputy Clerk