UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GAROLD ALLEN, et al.,

                    Plaintiffs,

                                              Case No.  07-11706

vs.

                                              HON.  GEORGE CARAM STEEH

SEARS ROEBUCK AND CO., et al.,

                    Defendants.

_____/

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT [DOC. 207]

    This matter is before the court on defendants', Sears, Roebuck and Co., Sears

Home Improvement Products, Inc. and Sears Holdings Corporation, motion for

summary judgment.  Oral argument was heard on defendants' motion on November 10,

2010.  For the reasons stated below, defendants' motion for summary judgment is

granted, and plaintiffs' complaint is dismissed in its entirety.

FACTS

    Sears employed 550 HVAC sales associates nationwide.  These sales

associates worked from their homes on a commission basis.  They received "leads"

from their home offices and were reimbursed for business expenses.  They received

paid holiday, vacation and personal time using their "benefit rate," an hourly amount that

changed quarterly dependent upon commissions earned.

    Sears acquired other home improvement companies, and combined them into a

wholly owned subsidiary, SHIP, in 2001.  In 2004, Sears announced to its HVAC sales

associates that their unit would be closing and that their employment would be

"transitioned" to SHIP.  This intra-corporate merger dramatically changed HVAC sales associates' compensation.  Approximately 288 hours of paid time off per year were lost and business expenses were no longer reimbursed.  As a result of the changes to their pay plan attendant to the transition, many HVAC sales associates terminated their employment with defendants.

The first transitions to SHIP began in November 2004 and the last occurred in April 2005.  Plaintiffs were all age 40 and above at the time they terminated their employment, and they each left their employment during the years 2004 through 2006. Before the transition, but after it was announced, 63 Sears HVAC sales associates left. By June 2005, a total of 265 had separated from the company.  By August 2006, only 96 sales associates remained in a SHIP HVAC sales associate position.

When plaintiffs filed their complaint, they identified the transition as the policy which caused older workers to leave in disproportionate numbers.  Now that discovery is over, plaintiffs have refined their assertions concerning the aspects of the transition that caused so many HVAC sales associates to leave as the elimination of paid time off and business expense reimbursements.

Plaintiffs retained a statistical expert, Dr. Nitin Paranjpe, to analyze the transition of Sears HVAC sales associates from Sears to SHIP.  Dr. Paranjpe concluded in his report that, statistically, older workers exited at a higher rate than younger workers.

This case was originally filed by seven plaintiffs, and on April 15, 2009 the court granted plaintiffs' motion for conditional certification, authorizing the matter to proceed as a conditionally certified collective action.  The court approved a Notice and Consent Form on June 28, 2009, which defined the eligible class of individuals as those who

"were employed by Sears, Roebuck and Co. as an HVAC sales associate; were at least 40 years of age on November 1, 2004; and [who] quit, retired, or were terminated between July 8, 2004 and April 30, 2006."  Twenty former HVAC sales associates signed and returned consent forms.

Plaintiffs contend that defendants were aware of the age demographic differences between HVAC sales associates and SHIP personnel, and knew that 83% of the HVAC sales associates were over 40 years old.  Defendants were also allegedly aware that a "large retirement wave will occur" due to the fact that a large number of HVAC sales associates were over 55 with more than 20 years of service.

Mark Good, then Executive Vice-President of Sears Home Services, testified that he made the decision to transition the workers form Sears to SHIP.  He had managed both the Sears HVAC business unit as well as SHIP, and considered the SHIP business model to be "the best operating model . . . in the country" in terms of selling big ticket in-home improvement products.  (Good dep. 96, 186).  Defendants identify benefits of the SHIP business model to transitioned employees, including appointment-setting by SHIP, and larger territories.  Plaintiffs counter that the Sears' model, where they had the opportunity to call leads, answer preliminary questions, and arrange a sit down meeting, was superior because it gave the customer the opportunity to appreciate their expertise and become comfortable with them.  According the plaintiffs, the larger territory actually limited the ability of sales associates to run as many appointments as they could at Sears.

Good did not know the ages of the HVAC and SHIP sales associates at the time he made the decision to merge the units.  (Good dep. 102-04).  Good also testified that

3

he was not involved in the series of decisions that implemented the transition. For example, the issue of whether or not to offer paid time off was a human resources decision. (Good dep. 127-28). It is defendants' position that there was no decision made, as such, not to offer the newly transitioned sales associates paid time off, or to reimburse their business expenses. Rather, when the Sears sales associates were transitioned from Sears to SHIP, the SHIP polices and procedures, including those regarding compensation, automatically applied to them. (Defendants' Objection to Plaintiffs' Rule 30(b)(6) Deposition Notice, Doc. 98).

The purported intent of the transition was to expand the HVAC business. Good wanted all of the HVAC sales associates to make the transition and succeed as sales associates with SHIP. (Good dep. 184-85). In his view, the more experienced sales associates performed better. (Good dep. 56). To encourage experienced HVAC sales associates to remain with SHIP, Sears ensured that the transitioning sales associates kept their Sears service date, remained in the Sears Pension Plan, and retained the option of retiree health benefits, even though other SHIP employees did not have those benefits. (McShane dep. 7; Willms dep. 21-22). The transferred HVAC sales associates were paid pursuant to SHIP's compensation system. They were paid on a commission basis, using the HVAC commission rates plus an additional 1%. (Allen dep. 148). They were also eligible for monthly bonuses based on their sales. The big difference between the two business models is that the SHIP system did not give paid time off or reimburse business expenses.

Sales associates who actually worked at SHIP testified that they worked approximately the same number of hours at both Sears and SHIP, but while they had

4

more face time with customers at Sears, they spent more of their day driving between appointments at SHIP. (Kyte dep. 38; Nikias dep. 32, 41; Wirtz dep. 44-45). The in-home selling process was similar at both entities. According to defendants, the first year following the transition, HVAC sales increased by $100 million over the pre-integration HVAC business. (McShane dep. 180-81). Seventy-seven percent of HVAC sales associates who transitioned to SHIP and stayed a full year, had higher annual earnings after the transition, taking into account paid time off and expense reimbursement earnings during their last year at Sears. (McShane dep. 168; defendants' Ex. 15). Twenty-three percent of the transitioned HVAC sales associates earned less under the SHIP model than they had the previous year at Sears. (Defendants' Ex. 15).

<u>STANDARD FOR SUMMARY JUDGMENT</u>

Federal Rule of Civil Procedure 56(c) empowers the court to render summary judgment "forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." <u>See</u> <u>Redding v. St. Eward</u>, 241 F.3d 530, 532 (6th Cir. 2001). The Supreme Court has affirmed the court's use of summary judgment as an integral part of the fair and efficient administration of justice. The procedure is not a disfavored procedural shortcut. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 327 (1986); <u>see</u> <u>also</u> <u>Cox v. Kentucky Dept. of Transp.</u>, 53 F.3d 146, 149 (6th Cir. 1995).

The standard for determining whether summary judgment is appropriate is "'whether the evidence presents a sufficient disagreement to require submission to a

jury or whether it is so one-sided that one party must prevail as a matter of law.'"
Amway Distributors Benefits Ass'n v. Northfield Ins. Co., 323 F.3d 386, 390 (6th Cir.
2003) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)). The
evidence and all reasonable inferences must be construed in the light most favorable to
the non-moving party.  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S.
574, 587 (1986); Redding, 241 F.3d at 532 (6th Cir. 2001).  "[T]he mere existence of
some alleged factual dispute between the parties will not defeat an otherwise properly
supported motion for summary judgment; the requirement is that there be no genuine
issue of material fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)
(emphasis in original); see also National Satellite Sports, Inc. v. Eliadis, Inc., 253 F.3d
900, 907 (6th Cir. 2001).

         If the movant establishes by use of the material specified in Rule 56(c) that there
is no genuine issue of material fact and that it is entitled to judgment as a matter of law,
the opposing party must come forward with "specific facts showing that there is a
genuine issue for trial."  First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 270 (1968);
see also McLean v. 988011 Ontario, Ltd., 224 F.3d 797, 800 (6th Cir. 2000).  Mere
allegations or denials in the non-movant's pleadings will not meet this burden, nor will a
mere scintilla of evidence supporting the non-moving party.  Anderson, 477 U.S. at 248,
252.  Rather, there must be evidence on which a jury could reasonably find for the non-
movant.  McLean, 224 F.3d at 800 (citing Anderson, 477 U.S. at 252).

6

ANALYSIS

I.  Disparate Impact Age Discrimination

    A.  Facially Neutral Employment Practice or Policy

A disparate impact age discrimination claim challenges an employer's decision to classify employees in a way that uniquely adversely affects the older employees' on-the-job status.  Age Discrimination in Employment Act "ADEA", 29 U.S.C. §623(a)(2); Smith v. City of Jackson, 544 U.S. 228 (2005).  A disparate impact claim involves employment practices or policies that are facially neutral, but have a disproportionately adverse effect on protected groups.  Pacheco v. Mineta, 448 F.3d 783, 787 (5th Cir. 2006).  Plaintiffs must identify a "specific test, requirement, or practice [or policy] . . . that has an adverse impact on older workers."  City of Jackson, 544 U.S. at 241. Moreover, the policy or practice must be "facially neutral," i.e., not intended to discriminate based on age.  Allen v. Highlands Hosp. Corp., 545 F.3d 387, 403 (6th Cir. 2008).

Plaintiffs recognize that disparate impact claims are not available to challenge hiring and termination practices, which fall under the province of 29 U.S.C. § 623(a)(1), addressing disparate treatment.  For this reason, plaintiffs take pains, both in their pleadings and at oral argument, to stress that this is not a termination or constructive discharge case.  Rather, plaintiffs target facially neutral policies, which they contend are responsible for the disparate impact alleged - older employees leaving their employment at higher rates than younger employees.

The facially neutral policies identified by plaintiffs are described as a series of discrete decisions, including the decisions to eliminate paid time off and expense

7

reimbursement, which were aspects of the transition to SHIP.  Plaintiffs agree that the transition itself was a temporally limited program, but plaintiffs assert that the decisions of how to implement the transition are the policies and practices that actually caused employees to leave.

Defendants attack the very premise of plaintiffs' argument by pointing out that the policies identified by plaintiffs impacted both younger and older workers in the same manner.  *All* of the HVAC sales associates were transitioned to SHIP, and *all* of them were subject to the same pay plan that already existed at SHIP.  The SHIP pay plan was less favorable than the plan the HVAC sales associates had at Sears with regard to paid time off and expense reimbursement, but, after the transition, the SHIP plan applied to everybody equally.  This equal treatment, plaintiffs point out, is the nature of a "facially neutral policy."

In Smith v. City of Jackson the Supreme Court held that the city's decision to adjust pay for a group of employees in order to bring them into line competitively was not a specific test, requirement, or practice.

> [P]etitioners have done little more than point out that the pay plan at issue is relatively less generous to older workers than to younger workers.  They have not identified any specific test, requirement, or practice within the pay plan that has an adverse impact on older workers. . . . [I]t is not enough to simply allege that there is a disparate impact on workers, or point to a generalized policy that leads to such an impact.  Rather, the employee is "responsible for isolating and identifying the *specific* employment practices that are allegedly responsible for any observed statistical disparities." (citation omitted).  Petitioners have failed to do so.  Their failure to identify the specific practice being challenged is the sort of omission that could "result in employers being potentially liable for 'the myriad of innocent causes that may lead to statistical imbalances . . . .'" (citation omitted).

544 U.S. at 241.

8

Plaintiffs in this case have also failed to identify a specific employment practice that is responsible for any observed statistical disparities.  Where other plaintiffs have succeeded in making out the first prong of their prima facie case, they have shown a test, policy or practice used to guide employer decisions in selecting employees.  <u>See</u>, <u>e.g.</u>, <u>Griggs v. Duke Power Co.</u>, 401 U.S. 424 (1971) (policy required applicants to pass standardized intelligence test and to have a high school diploma to be hired or to transfer within company); <u>EEOC v. Allstate Ins. Co.</u>, 528 F.3d 1042 (8th Cir. 2008), *vacated on other grounds* ("no-rehire" policy restricting rehire of former employee-agents terminated under reorganization plan).

The decision not to protect certain benefits lost during a transition might be considered facially neutral, but is not an employment practice or policy for purposes of the disparate impact analysis.  By not identifying a specific "test, requirement, or practice", plaintiffs have failed to satisfy the first prong of a disparate impact claim under 29 U.S.C. § 623(a)(2) and <u>City of Jackson</u>.

   B.  <u>Statistical Evidence</u>

Disparate impact plaintiffs bear the burden of "offering statistical evidence of a kind and degree sufficient to show that the practice in question" has a disparate impact on older workers.  <u>Abbott v. Federal Forge</u>, 912 F.2d 867, 872 (6th Cir. 1990).  A "prima facie case of disparate impact requires a showing of adverse impact through 'relevant statistical analysis,' and a 'complete failure to make any such statistical showing is fatal to [a] claim.'" <u>Adams v. Lucent Technologies, Inc.</u>, 284 Fed. Appx. 296, 304 (6th Cir. 2008) (affirming summary judgment on disparate impact claim) (citations omitted).  Plaintiffs' proposed statistical expert, Dr. Paranjpe, concludes in his report that older

9

HVAC sales associates left Sears at higher rates than younger sales associates, but he does not link the alleged statistical disparity to any specific employment practice.  "A prima facie case under the theory of disparate impact discrimination requires a specific, identifiable employment practice or policy that caused a significant disparate impact on employees over 40 years of age.'" Id. at 303.  Plaintiffs object that defendants did not provide adequate information in their data to make any conclusions as to causation, but that causation in this case is obvious on its face.

Dr. Paranjpe's conclusion is that after the transition, older HVAC sales associates left Sears at higher rates than younger sales associates.  In his deposition, Dr. Paranjpe admits that he did not take retirement eligibility into account.  (Paranjpe dep. 162).  Nor did he analyze the data for a connection between employees who left and a lack of mileage reimbursement, lack of paid time off, or lack of scheduling freedom.  (Paranjpe dep. 163).  Finally, Dr. Paranjpe admitted that his analysis failed to control for any factors unrelated to age discrimination that could have caused people to leave rather than transition to SHIP.  (Paranjpe dep. 164-65).

Dr. Paranjpe explained his statistical analysis as generally observing the end result of a policy change.  Such observation will allow him to opine whether there is a disparate impact in a given case.  The lawyers then look at the evidence in the case, along with Dr. Paranjpe's statistical opinion of a disparate impact, and they may be able to draw an inference as to age discrimination.  (Paranjpe dep. 160).  In other words, Dr. Paranjpe does not look at the facts of a case, only at the resulting changes of employment status.

The most glaring problem with Dr. Paranjpe's report is that the analysis is not

10

relevant to the issue being considered by the court.[1]  Dr. Paranjpe was not asked to consider whether the alleged *facially neutral policy or practice alleged in this case*, specifically the loss of paid time off and expense reimbursement, caused a disproportionate number of HVAC sales associates to terminate their employment rather than transition to SHIP.  Plaintiffs have failed to offer statistical evidence sufficient to show that the targeted conduct had a disparate impact on older workers.  This failure to support causation with statistics is fatal to plaintiffs' prima facie case of disparate impact age discrimination.

     C.  <u>Reasonable Factors Other than Age</u>

The ADEA provides that, "it shall not be unlawful for an employer . . . to take action otherwise prohibited . . . where the differentiation is based on reasonable factors other than age."  29 U.S.C. § 623(f)(1).  There is evidence in this case that defendants' decisions not to provide HVAC sales associates with paid time off and expense reimbursement following the transition, even if such decisions did constitute a policy or practice, were business decisions based on reasonable factors other than age ("RFOA").  Some of the reasons include the desire to integrate Sears' home improvement business, improve customer service, take advantage of SHIPs' superior marketing, increase sales, and reduce operating costs.

In <u>Allen v. Highlands Hosp.</u>, 545 F.3d 387 (6th Cir. 2008), the employer had a stated policy of increasing employee turnover to replace higher-paid senior employees.

---

[1]The court notes that defendants have also filed a motion to exclude the testimony and opinions of Dr. Paranjpe [Doc. 218].  Given the court's opinion granting summary judgment in favor of defendants, by way of separate order the court has denied to motion to exclude as moot.

11

The Sixth Circuit rejected plaintiffs' disparate impact age discrimination claim:

> [T]he plaintiffs have at best alleged that [defendant] desired to reduce costs associated with its highly paid workforce, including those costs associated with employees with greater seniority.  But the plaintiffs have not established that this corporate desire evolved into an identifiable practice that disproportionately harms workers who are at least 40 years old.  Because [plaintiffs] have simply pointed to a generalized policy, as opposed to specific practice, they have therefore failed to raise a genuine question of material fact with respect to their disparate-impact claim.

Id. at 404-05.  In this case, plaintiffs themselves allege that the business decisions at issue were aimed at decreasing costs associated with long-tenured employees.

The Supreme Court has clarified that the reasonable factors other than age exemption is an affirmative defense that places the burden of persuasion on employers to show that a practice that has a disparate impact on employees who are at least 40 years old is based on reasonable factors other than age.  Meacham v. Knolls Atomic Power Lab., 554 U.S. 84, 128 S.Ct. 2395, 2400-02.  In the wake of City of Jackson and Meacham, the EEOC published proposed rules on the definition of "reasonable factors other than age."  A reasonable factor is "one that an employer exercising reasonable care to avoid limiting the employment opportunities of older person would use."

If one reasonable factor other than age was to reduce operating costs, then the elimination of paid time off and business expense reimbursement would support this goal.  This is exactly the allegation made by plaintiffs.  In the complaint, plaintiffs allege that the "cost of doing business . . . would be hoisted squarely on the Sales Associates." (Second Amended Complaint, ¶ 56).  Opt-in plaintiff David Proctor testified that it was his opinion that the transition was designed to force out the HVAC sales associates who were over the age of 40.  (Proctor dep. 46).  Opt-in plaintiff Robert Wirtz testified that

12

the transition was designed to force out those sales associates with the costliest benefits.  (Wirtz dep. 65).

The evidence in this case supports a finding that the decisions to eliminate paid time off and business expense reimbursement were reasonable factors other than age. As such, these reasonable business decisions provide an affirmative defense to a disparate impact age discrimination claim.  Plaintiffs point out that in California, state law requires the reimbursement of business expenses, and in California the turnover rate was dramatically lower.  While this evidence lends support to plaintiffs' argument that sales associates terminated their employment over the loss of expense reimbursement, it does not alter the fact that, as a decision based on reasonable factors other than age, the elimination of expense reimbursement and paid time off is not evidence of age discrimination.

D.  Conclusion

Plaintiffs have failed to identify a facially neutral practice or policy to support a disparate impact age discrimination claim.  In addition, plaintiffs have failed to offer statistical evidence to support their theory that the decision to eliminate expense reimbursement and paid time off had a disparate impact on older workers.  Finally, defendants in this case have established that the transition, and the decisions made in implementing the transition, were based on reasonable factors other than age, which is a complete affirmative defense to plaintiffs' disparate impact claim.  For each of these reasons, defendants' motion for summary judgment as to plaintiffs' disparate impact claim is GRANTED.

13

II.  Disparate Treatment Age Discrimination

An intentional age discrimination, disparate treatment claim may be established using either direct evidence of age discrimination or the McDonnell Douglas framework. Mitchell v. Vanderbilt Univ., 389 F.3d 177, 181 (6th Cir. 2004).  The burden of persuasion remains on the ADEA plaintiff at all times to demonstrate that age was the "but-for" cause of the challenged adverse employment action.  Geiger v. Tower Automotive, 579 F.3d 614, 620 (6th Cir. 2009) (citing Gross v. FBL Fin. Serv., 129 S.Ct. 2343, 2345 (2009)).  An ADEA claim cannot succeed unless the employee's age actually played a role in the employer's decision-making process and had a determinative influence on the outcome.  See Gross, 129 S.Ct. at 2350.

Plaintiffs explain that they did not originally bring a disparate treatment claim because it does not fit the traditional framework as developed in the caselaw.  Plaintiffs admit they are not accusing defendants of treating older employees differently than younger employees.  Rather, plaintiffs' disparate treatment claim is based on the disparate impact model, with the additional allegation that the adverse impact was intended by defendants.  Plaintiffs contend that there is circumstantial evidence that defendants knew older employees would quit due to the loss of benefits attendant to the transition to SHIP.  Unfortunately for plaintiffs, there is no precedent to support their "disparate impact plus" theory.

None of the plaintiffs suffered an adverse employment action, such as firing or filing to promote.  Freeman v. Potter, 200 Fed.Appx. 439, 442 (6th Cir. 2006) (citation omitted).  Each plaintiff was offered a sales representative job with SHIP, and each voluntarily quit either before or shortly after the transition.  Plaintiffs admit this is not a

14

constructive discharge case.  Plaintiffs are unable to establish a prima facie case of age discrimination due to a lack of an adverse employment action.  In addition, as discussed above with regard to the reasonable factors other than age, defendants had legitimate non-discriminatory reasons for the transition, as well as for the decisions implementing the transition.

The Sixth Circuit has recognized that cost-saving constitutes a legitimate non-discriminatory reason for certain business decisions undertaken by an employer. Schuch v. Savair, 118 Fed.Appx. 16, 23 (6th Cir. 2004).  Defendants have identified several reasons for the transition, so plaintiffs must "show that each proffered reason is merely a pretext for illegal discrimination."  Kestner v. Stanton Group, 202 Fed.Appx. 56, 60 (6th Cir. 2006).  The fact that Sears hired back several of the plaintiffs even after they had resigned, confirms the non-discriminatory nature of its actions.  Plaintiffs Robert Wirtz, Charles Nikias and David Proctor were re-hired in 2007 and 2008, when they were older than they were at the time of the initial transition.

<u>CONCLUSION</u>

For the reasons stated in this opinion and order, defendants' motion for summary judgment is GRANTED as to plaintiffs' disparate impact and disparate treatment age discrimination claims.

Dated:  March 10, 2011

S/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
March 10, 2011, by electronic and/or ordinary mail.

S/Josephine Chaffee
Deputy Clerk